IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHANNON MARIA TRIMBLE-CASADO,

           Plaintiff,

vs.                                                  CASE NO. 1:17-cv-145-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

           Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for disability insurance benefits pursuant to the Social Security

Act. ECF No. 1. The Commissioner has answered, and both parties have

filed briefs outlining their respective positions. ECF Nos. 8, 14, 15. For the

reasons discussed below, it is recommended that the Commissioner's

decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff's March 2013 application alleged disability beginning

February 15, 2011, due to endometriosis, depression, anxiety, back pain,

knee pain, memory loss, pelvic pain, migraines, bipolar disorder, right leg

pain, bilateral hand pain, and right foot pain.  R. 199, 231, 246.   Her

application was denied initially and upon reconsideration.  R. 107, 131.

Following a hearing, an administrative law judge ("ALJ") issued an

unfavorable decision, finding that Plaintiff was capable of performing a

reduced range of work at the light level of exertion.  R. 32-44.  The Appeals

Council denied review.  R. 1-3.  Plaintiff then filed the instant appeal.  ECF

No. 1.  Plaintiff argues that the ALJ's RFC determination is not supported

by substantial evidence because she is unable to work a full 40-hour week,

and that the ALJ erred in evaluating her subjective complaints.  ECF No.

14.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence

is more than a scintilla, i.e., the evidence must do more than merely create

a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d

580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit Her physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

past work) prevent him from doing other work that exists in the national

economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past

relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996,

1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001). The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently

exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

## III.  SUMMARY OF THE RECORD

### A.  ALJ's Decision

The ALJ determined that Plaintiff has the severe impairments of (1)

status post-right knee medial repair; (2) degenerative disc disease; (3)

neuropathy; and (4) suspected bipolar disorder, anxiety, and depression.

R. 34.  The ALJ determined that Plaintiff's medically determinable

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner.
> The Commissioner must produce evidence that there is other work available
> in significant numbers in the national economy that the claimant has the
> capacity to perform.  In order to be considered disabled, the claimant must
> then prove that he is unable to perform the jobs that the Commissioner lists.
> The temporary shifting of the burden to the Commissioner was initiated by
> the courts, and is not specifically provided for in the statutes or regulations.

> *Id.* (internal citations omitted).

impairments of hypertension and endometriosis were non-severe. *Id.* at

35. Plaintiff does not have an impairment or combination of impairments

that meets or equals the listings. *Id.* The ALJ determined that Plaintiff has

the RFC for light work, with additional exertional, postural, environmental,

and mental limitations. R. 36-37. The ALJ concluded that Plaintiff's

subjective complaints regarding the limiting effects of her impairments were

not entirely consistent with the objective medical evidence and other

evidence of record, including Plaintiff's own reported daily activities, which

reflect an able individual. R. 41. To support this finding, the ALJ

extensively discussed the relevant medical evidence, including the opinions

of state agency medical consultants, as well as Plaintiff's functional activity

reports and the hearing testimony. The ALJ made "claimant favorable"

findings in further reducing her RFC from the recommendations of the

agency consultants. R. 42.

The ALJ determined that Plaintiff could not return to her past relevant

work as a booker, service establishment attendant, presser, delivery driver,

and returned-goods sorter, because the demands of her past relevant work

exceed her RFC. R. 43. Based upon the testimony of a VE, the ALJ

determined that in light of Plaintiff's age, education, work experience, and

RFC, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform, such as small parts assembler,

inspector and hand packager, and mail clerk.  R. 43-44.  The ALJ therefore

found that Plaintiff was not disabled.  R. 44.

## B.  Medical and Opinion Evidence

Plaintiff's arguments that are relevant to the specific decision under

review (versus generalized complaints about the disability claims process)

focus on her claim that as a result of her combination of impairments she

cannot be present and function in the workplace eight hours a day, five

days a week, without being absent from work two or more days per month.

Plaintiff does not, however, contend that the ALJ erred in finding that only

four of her impairments are severe (status post-right knee medial repair;

degenerative disc disease; neuropathy; and mental impairments) for

purposes of determining her RFC.  In fact, Plaintiff concedes that the ALJ's

determination of her RFC is not "overtly incorrectly," but rather she

contends that the ALJ erred in assessing her subjective claim that she has

a number of "bad days" per month that preclude work attendance.  ECF

No. 14 at 27.  In view of the scope of Plaintiff's arguments, the Court's

summary of the evidence focuses on the impairments that were found to be

severe.  The records that are relevant to the ALJ's determination of

Plaintiff's RFC may be summarized as follows.

Plaintiff underwent right knee arthroscopy in October 2012 for a meniscal tear.  R. 491.  An MRI in February 2013 showed that the tear was stable.  R. 496.  Plaintiff again underwent arthroscopic surgery in November 2013 to address the tear.  R. 588-89.  An ultrasound of the lower right leg in December 2013 showed no evidence of deep venous thrombosis. R. 575.

Plaintiff's subsequent physical examinations in 2014 were generally normal with a stable gait and no noted right knee complaints.  R. 655, 775-76. There was no indication that Plaintiff required an assistive device or that she was otherwise limited in her mobility and ambulation.  *See id.*

In February, August, September, October and December 2015, Plaintiff was seen by Hoa V. Le, M.D..  R. 752-53, 756, 760, 764, 768.  Dr. Le's examination notes reflect that Plaintiff had mild swelling and tenderness in the right knee, with decreased range of motion.  R.  753. Dr. Le assessed Plaintiff with right-sided sciatica and referred her to a neurologist.  R. 753.  Dr. Le's examination notes do not reflect that Dr. Le imposed any restrictions on Plaintiff as a result of her mild knee symptoms.  *See id.*  Plaintiff's treatment records for this condition reflect that she managed her symptoms through conservative treatments such as medications and monitoring.  R. 752-53, 756, 760, 764, 768.

With respect to Plaintiff's degenerative disc disease, cervical, thoracic, and lumbar spine x-rays in January 2013 were normal, with no acute bony abnormalities noted.  R. 431-33.  Notes from appointments in February and March 2013 with Jeffrey L. Tedder, M.D., reflect that Plaintiff had a sprain and strain of the lumbosacral joint.  R. 474-75. Dr. Tedder recommended that Plaintiff have an MRI of the lumbar spine.  R. 474.

In January 2014, Plaintiff had an MRI of the thoracic spine, which showed a small right posterolateral and foraminal protrusion type disc herniation at T4-T5 that was mildly compressing the thecal sac.  R. 617.  The results revealed no other focal disc herniation, cord compression, central canal or foraminal stenosis.  *Id.*   At a February 2014 office visit, Dr. Le prescribed Percocet for Plaintiff's disc herniation.  R. 625.  A June 2014 MRI of Plaintiff's lumbar spine was normal.  R. 735-36.

During Plaintiff's visits in February, August, September, October and December 2015, Dr. Le noted some tenderness with decreased range of motion in the lumbar and thoracic spine.  R. 753, 756, 760, 764, 768.  Dr. Le assessed Plaintiff with right side sciatica and muscle spasm and prescribed hydrocodone and ibuprofen.  R. 753, 756, 760, 764, 768. Notes reflect that Plaintiff complied with prescription directives and obtained relief from the medications.  R. 654.

With respect to her severe impairment of neuropathy, in March 2014, Plaintiff was examined by Christina Diaz, M.D., for a neurology consultation for hand and leg pain.  R. 654-55.  At that time, Plaintiff had normal sensory responses, full 5/5 muscle strength, and no gait or station abnormalities.  R. 655.  Nerve conduction tests were normal, and Dr. Diaz found no evidence of sensory neuropathy or motor impairment in Plaintiff's legs.  *Id.*  Notes from a follow up visit in April 2014 reflect no signs of "clear weakness".  R. 653. Nerve conduction tests were unremarkable.  R. 653.  Dr. Diaz did not prescribe any medications.  She encouraged Plaintiff to lessen her narcotic use.  *Id.*

With respect to Plaintiff's mental impairments, in June 2012 Sylvia Santiago, M.D., noted that Plaintiff had past diagnoses of suspected bipolar disorder and depression.  R. 398.  At that time, Plaintiff's psychological examination was normal.  R. 400.  Plaintiff visited Karl Jones, M.D., P.A., in December 2013.  R. 601. Dr. Jones assessed her mental status as generally normal and noted a diagnostic impression of Bipolar II.  R. 601. Dr. Jones prescribed Lamictal, Cymbalta, and Klonopin.  R. 601. Notes from a visit to Dr. Le in February 2014 indicated that Plaintiff took Clonazepam and Cymbalta for her anxiety and depression, as prescribed

by her psychiatrist, but she was alert and fully oriented at that time.  R. 624-25.

In September 2014, Christine Boogaerts, D.O./S.D., P.A., treated Plaintiff for an anxiety attack and prescribed Valium.  R. 663-64. Dr. Boogaerts also provided Plaintiff with an excused absence from work for two days.  R. 665. In October 2014, David Martin, M.D., treated Plaintiff for a panic attack and prescribed Ativan as needed for anxiety.  R. 674, 681, 683.

Plaintiff was treated at Meridian Behavioral Healthcare from April 2015 through July 2015.  R. 830, 832.  Plaintiff generally presented with normal thought process and content with symptoms of moderate depression and anxiety.  She had a full range affect, intact orientation and memory, average or above intelligence, and fair insight and judgment.  R. 832, 842-43.  Plaintiff reported that medication helped control her symptoms.  R. 832, 838.  Plaintiff's July 2015 discharge summary reflects that she had made fair progress toward goals and objectives.  R. 830.

Plaintiff received counseling at Caring Community Counseling from July 2015 through December 2015 with Marilyn Rodriguez, M.A., M.H.C. R. 697-705, 708, 710, 711, 713. In August 2015, Plaintiff reported that her medications were helping and she was making progress.  R. 711. In

October 2015, Plaintiff reported feeling good and wanting to return to work.
R. 703. Throughout her treatment, notes indicated that Plaintiff was
compliant with medication and her condition was improving.  R. 715, 717,
718, 720, 722, 724. By December 2015, Plaintiff's examination was
generally normal, including mood, attitude, thought processes, attention
and concentration, and her condition was listed as stable and improving.
R. 715.

The relevant opinion evidence includes the February 24, 2014,
opinion of Alicia Maki, Ph.D., a state agency psychological consultant.  Dr.
Maki opined that Plaintiff has non-severe affective disorders which cause
no restriction in activities of daily living, no difficulties in maintaining social
functioning, and mild difficulties in maintaining concentration, persistence,
or pace.  R. 100-102.  On May 26, 2014, Lee Reback, Psy.D., opined on
reconsideration that Plaintiff has non-severe mental impairments resulting
in only mild functional restrictions.  R. 114-15.  The ALJ afforded these
opinions little weight, in view of the other record evidence reflecting that
Plaintiff does have severe mental impairments.  R. 41-42.

State medical consultant Lise Mungul, M.D., opined on June 12,
2014, that Plaintiff was capable of performing a range of unskilled light
work, with some exertional, postural, and environmental limitations.  The

ALJ observed that Dr. Mungul did not have the benefit of Dr. Diaz'

examination findings, which supported greater limitations than those

assessed by Dr. Mungul.  The ALJ therefore afforded only partial weight to

Dr. Mungul's opinion.  R. 42.

## C.  Hearing Testimony

Plaintiff, through counsel, amended her onset date to November 21,

2013, at the hearing.  R. 55.  At the time of the hearing, Plaintiff was 34

years old.  R. 57.  She completed school through 11th grade and has

vocational training in early childhood education.  Plaintiff testified that she

last worked in September 2014, when she did bookkeeping for her fiancé's

landscaping business.  She stopped working because her depression and

back pain got worse.  Plaintiff testified that her worsening depression,

anxiety, and constant back and knee pain preclude working.  She has

difficulty sitting or standing for long periods of time.  Driving is difficult

because here leg shakes when she uses the gas pedal and brake, her

back hurts, and she gets anxiety on the road.  R. 57-59, 63-64.

Plaintiff has a four-year-old daughter, and lives in a household with

her child, her fiancé, her fiancé's parents and their small dog, and the

parents' three grandchildren.  The parents are paying their expenses.  R.

61-64.

Plaintiff receives psychiatric care through Caring Community in St. Petersburg.  She previously received treatment at Meridian Behavioral Healthcare.   Plaintiff currently takes Wellbutrin, which makes a small difference but she still feels depressed.  She also takes Gabapentin and other medications, some of which make her sleepy.  She is compliant with her medication regimen.   R. 65-67.

Plaintiff testified that she does not get much sleep, but a typical day involves getting her daughter dressed and feeding her daughter, and making sure she is ready for the day.  Plaintiff gets up late if she has taken pain medication, and pain keeps her awake at night.  Plaintiff mostly stays in bed, and her fiancé handles activities with their daughter because Plaintiff is either in pain or depressed.  She receives help with laundry. Plaintiff can do the dishes, but her fiancé helps with household chores. Plaintiff conceded that her 2014 function report stated that she did the laundry once a week and tried to help clean, but testified that she had gotten worse because of pain and depression.  Everyone pitches in with the grocery shopping, but Plaintiff will do it if no one else can.  She watches TV or watches her daughter play.  Plaintiff is able to care for her personal needs.  She has a computer at home, but prefers to use her phone.  She does not belong to social groups, and does not see friends or family except

for her mother, with whom she is close.  Plaintiff testified that she is able to sit on the floor and play Barbies with her daughter.  She used to go to Busch Gardens once or twice a week and go for walks, but she is unable to do those activities.  R. 68-73.

Plaintiff testified that her lower back gives her the most pain.  It is difficult to bend over, and she gets burning pain.  The pain also goes to her neck and the middle of her back.  Bending makes the pain worse.  Her most comfortable position is lying down.  She takes hydrocodone for pain and ibuprofen for inflammation.  Plaintiff can only walk a block before her right knee and back start to hurt.  Her left knee also hurts.  She can only sit or stand for 10 minutes at a time without having pain.  She can lift five or 10 pounds, but her OB-GYN told her not to lift more than 20 pounds due to endometriosis.  That was reduced to 10 pounds following surgery to remove a cyst in 2015.  R. 74-76.

Plaintiff's anxiety manifests in a feeling of unreality.  She has to take medication to go in a store or restaurant.  She feels disconnected, and then she has panic attacks.  She takes Klonopin for anxiety, which helps but makes her sleepy.  Plaintiff testified that she has panic attacks once or twice a month, lasting from 30 seconds up to a week.  The medication does not always help, but it will sometimes bring her back to reality and make

her feel safer.  Plaintiff has been diagnosed with bipolar disorder.  On some days she feels happy and motivated, but it does not last long and then she gets really down and depressed.  She suffers from the low times 70 or 80 percent of the month.  She has difficulty completing tasks, or tasks take longer than they should.  R. 77-81.

Plaintiff has bilateral median neuropathy in her hands, with the right hand being worse.  She takes Gabapentin for neuropathy, but it does not help.  She has to use her left hand for support if she lifts anything with her right hand because her right hand is weak.  It is difficult to write or grip things.  With her physical and psychological problems combined, Plaintiff has 20 or more "really bad" days per month.  R. 83-85.

The ALJ posed a hypothetical to the VE that assumed an individual of the same age and education as Plaintiff with the RFC for light work; prohibited from climbing ladders, ropes, or scaffolds; limited to occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching or crawling; must avoid moderate exposure to hazardous machinery, unprotected heights, and open flames; limited to doing simple, routine, repetitive tasks; working in a low stress job with no fixed production quotas; no hazardous conditions; only occasional decision-making required; only occasional changes in work setting; only occasional

interaction with coworkers and supervisors; and no more than occasional

interaction with the general public.  The VE testified that such a person

would be unable to do any of Plaintiff's past work.  The returned-goods

sorter position, although light work, would be eliminated because it required

frequent stooping.  The VE identified other light jobs that such a person

could perform, including small parts assembler, inspector and hand

packager, and mail clerk.  R. 90-91.  The VE testified that the person would

also be able to perform sedentary jobs such as document preparer, check

weigher, and final assembler.  *Id.* at 92.  A person who would be absent

from work in excess of one day per month on a regular basis would be

unable to maintain any of the identified jobs.  *Id.*

## IV.  DISCUSSION

### *ALJ's Evaluation of Subjective Complaints and RFC Determination*

Plaintiff argues that she should have been found disabled at Step 5 of

the sequential evaluation because "it is entirely credible that as a direct and

proximate result of her combination of impairments," (alleged to include

memory loss; ataxia; dizziness; headaches, stroke; endometriosis;

disorders of the cervical, thoracic, and lumbar spine; bipolar disorder;

generalized anxiety disorder; panic disorder; neuropathy; and sciatica),

"she cannot be present and function in the workplace eight (8) hours a day,

five (5) days a week, without being absent from work two or more days per

month."  ECF No. 14 at 25-26.  As support for this argument, Plaintiff points

to her own testimony that she has "20 bad days a month."  Plaintiff argues

that "[e]ven assuming hyperbole, it would be reasonable to conclude [sic]

miss more than two days of work per month."  *Id.* at 26 n.13.  Plaintiff

argues that the ALJ failed to give adequate reasons for discrediting her

testimony regarding the number of "bad days" she experiences per month.

*Id.* at 27.

　　　To establish disability on the basis of subjective complaints, Plaintiff

must provide evidence of an underlying medical condition and either

objective medical evidence confirming the severity of the alleged symptoms

or that the medical condition could be reasonably expected to give rise to

the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395

F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite

objective medical evidence that confirmed the severity of the alleged pain .

. . or that the objectively determined medical conditions are of such a

severity that they can be reasonably expected to give rise to the alleged

pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580,

584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an

impairment affects Plaintiff's ability to work, and not on the impairment

itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547

(11th Cir. 1986) (severity of impairments must be measured in terms of

their effect on the ability to work, not from purely medical standards of

bodily perfection or normality).

The ALJ assessed Plaintiff's subjective complaints consistently with

the framework established under Social Security Regulation ("SSR") 16-3p.

*See* R. 38.  As the Eleventh Circuit has explained:

> SSR 16-3p rescinded a previous Social Security ruling that concerned
> the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463
> (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility"
> from its sub-regulatory policy because the Social Security
> Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p
> clarified that "subjective symptom evaluation is not an examination of an
> individual's character" and that a two-step evaluation process must be
> used. *Id.* Step one is to determine whether the individual has a medically
> determinable impairment that could reasonably be expected to produce
> the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the
> intensity and persistence of an individual's symptoms, such as pain, and
> determine the extent to which an individual's symptoms limit her ability
> to perform work-related activities. *Id.* at 49,464-66. The Commission
> stated:
>
> > Consistent with our regulations, we instruct our adjudicators to
> > consider all of the evidence in an individual's record when they
> > evaluate the intensity and persistence of symptoms after they
> > find that the individual has a medically determinable
> > impairment(s) that could reasonably be expected to produce
> > those symptoms. We evaluate the intensity and persistence of
> > an individual's symptoms so we can determine how symptoms
> > limit ability to perform work-related activities for an adult . . . with
> > a title XVI disability claim.

*Id.* at 49,463.  *Contreras-Zambrano v. Social Sec. Adm.*, 724 Fed.Appx. 700, 702-03 (11th Cir. 2018).[1]

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  R. 38.  The ALJ then conducted a thorough review of the record evidence.  First, the ALJ observed that Plaintiff's allegations of disabling pain symptoms are not consistent with the "mild findings in the overall record," and her allegations of work-precluding functional limitations are not substantiated by any treating or examining source.  R. 40.  As support for this finding, the ALJ pointed to Dr. Diaz's examination notes, summarized above, reflecting

---

[1] In October 2017, the SSA republished SSR 16-3p, clarifying that it was applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The republished version noted that the SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further noted that the regulations regarding the evaluation of symptoms were unchanged.  The decision under review in this case was made on April 19, 2016, and therefore SSR 16-3p is applicable. *See Contreras-Zambrano*, 724 Fed.Appx. at 702-03.

essentially normal findings including normal sensory response, full muscle strength, no gait or station abnormalities, and no evidence of sensory neuropathy or motor impairment.  Dr. Diaz encouraged Plaintiff to lessen her narcotic use.  R. 40, 653-55.

Regarding the functional effects of Plaintiff's alleged mental impairments, the ALJ pointed to the record evidence reflecting that while Plaintiff had received treatment for her conditions, the findings again were overall mild in nature.  The ALJ concluded that the record reflected conservative treatment with medication and counseling, and did not substantiate Plaintiff's allegations of totally disabling mental impairments. R. 40 (citing Plaintiff's mental health treatment records, summarize above).

Plaintiff's testimony that she has 20 "bad days" per month that are work-disabling finds no support in the objective medical evidence, and Plaintiff appears to concede that this assertion is "hyperbolic".  *See* ECF No. 14 n.14.  Plaintiff contends in this appeal that even two "bad days" per month would preclude full-time employment, but she again points to no objective medical evidence that would support such a finding, and the Court has identified none from its review of the record.  The ALJ's determination that Plaintiff's claim is not consistent with the record is well-supported.

The ALJ was further persuaded that Plaintiff's own reported daily activities reflect an able individual and are inconsistent with her subjective claims. *See* R. 41.  The ALJ observed that Plaintiff cares for her daughter, does some household chores (with some assistance), is able to go grocery shopping, and can drive, though with reported leg pain.  Plaintiff can sit on the floor and play with her daughter.  The ALJ accepted Plaintiff's claims of difficulty with anxiety and unexpected panic attacks, and lack of focus in completing tasks.  But the ALJ further noted Plaintiff's testimony that her condition is helped with medication, that she is able to watch TV or watch her daughter play, and uses her phone for computer-type tasks.  The ALJ found that these activities are consistent with a range of light-level exertion, and that no evidence demonstrates work-precluding limitations.  R. 41.

Lastly, the ALJ considered the available opinion evidence and made "claimant favorable" determinations in finding that Plaintiff was *more* limited than assessed by the state agency consultants.  The ALJ accounted for such additional limitations by including in the RFC mental and additional postural, exertional, and environmental limitations.  R. 41-42.

Plaintiff contends that the ALJ's finding that she could perform light work was inconsistent with the finding that she could not perform her past work as a returned-goods sorter, a job performed at the light exertional

level.  ECF No. 14 at 26.  This argument is unpersuasive.  The VE testified that based on the Dictionary of Occupational Titles, a returned-goods sorter is required to frequently stoop.  R. 91.  The ALJ's RFC specifically restricted Plaintiff to only occasional stooping, based upon her impairments that are supported in the record.  Thus, the ALJ properly concluded that Plaintiff could not perform that past work.  R. 43.

Accordingly, on this record, the undersigned concludes that the ALJ properly evaluated Plaintiff's subjective complaints and that the ALJ's RFC, finding that Plaintiff is capable of a reduced range of light work, is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 22nd of August 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.